UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

IN RE:

CAIR HEATING AND COOLING, LLC

DEBTOR

CASE NO. 23-31622
CHAPTER 11

**DEBTOR'S EXPEDITED MOTION FOR AN ORDER (A) AUTHORIZING THE DEBTOR TO PAY AND HONOR PREPETITION WAGES, BENEFITS AND RELATED ITEMS; (B) AUTHORIZING THE DEBTOR TO PAY INDEPENDENT SUBCONTRACTORS; AND (C) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS TRANSFERS RELATED TO SAID OBLIGATIONS**

Comes Cair Heating and Cooling, LLC, as debtor and debtor in possession (the "Debtor"), by counsel, and hereby moves the Court for an Order pursuant to 11 U.S.C. §§ 105, 363, 503, 507 and 541 that authorizes the Debtor to: (1) pay prepetition employee wages, salaries and benefits; (2) pay independent subcontractors; (3) pay all costs incident to the foregoing payments, including but not limited to payroll-related taxes, payroll processing fees; and (4) honor all other withholdings payable to third parties, including to make all payments related to employee benefit programs. The Debtor also requests the Order authorize and direct the Debtor's bank(s) to honor checks or electronic/ACH transfers covering the above-described payments that have been issued, but that may not have been presented for payment, may not have yet cleared through the banking system, or may have been denied for whatever reason prior to the Petition Date. In support hereof, the Debtor states as follows:

**JURISDICTION AND VENUE**

1.      On July 14, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief with this Court under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101,

*et seq*. (the "Bankruptcy Code"). The Debtor is operating its business as a debtor and debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2. This Court has jurisdiction over this Chapter 11 case under 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A).

3. The Debtor is a Kentucky limited liability company which maintains its principal place of business in Jefferson County, Kentucky. Accordingly, venue for the Debtor's Chapter 11 case is proper in this District under 28 U.S.C. § 1408 and 1409.

4. No trustee or examiner has been appointed in this Chapter 11 case, and no creditors' committee or other official committee has been appointed.

## BACKGROUND

5. The Debtor was formed as a Kentucky limited liability company in 2010. The Debtor's principal office is located at 1821 Cargo Court in Louisville, Jefferson County, Kentucky, where it leases a warehouse and office space.

6. The Debtor has historically been engaged in both commercial and residential HVAC installations, and currently maintains warehouses and offices in Louisville, Kentucky, Cincinnati, Ohio; Columbus, Ohio; and Indianapolis, Indiana. The majority of the Debtor's work consists of installing HVAC systems in multi-family residential projects.

7. The Debtor holds HVAC equipment in various warehouses, the majority of which is subject to purchase money security interests of the manufacturer. Both Goodman Distribution, Inc. and Daikin Comfort Technologies Distribution, Inc. have financing statements of record with the Kentucky Secretary of State asserting a lien against inventory purchased from them. Upon information and belief, Goodman has been acquired by Daikin Comfort Technologies. In addition, the Debtor obtained an SBA Economic Injury Disaster Loan in July of 2020, and the SBA recorded a financing statement asserting a lien in all assets of the Debtor.

8. Earlier this year, several of the general contractors that the Debtor works for began delaying payment of accounts receivable to the Debtor. This caused cash flow issues for the Debtor, who turned to merchant cash advance lenders in order to address the delayed cash flow while continuing to complete its work and begin new projects. Those lenders include On Deck Capital, LLC; Rocket Capital NY, LLC; TVT 2.0 LLC and Cucumber Capital, LLC. Repayment of the merchant cash advance lenders was made via daily or weekly ACH debits which did not change, even if the Debtor's revenue decreased.

9. The ultimate result of the repeated ACH debits by the merchant cash advance lenders was to further restrict the Debtors' cash flow. The Debtor defaulted under the merchant cash advance agreements and several of the lenders issued UCC lien notices to general contractors with outstanding accounts receivable due to the Debtor. Consequently, several general contractors have frozen payments to the Debtor, putting it at risk of not being able to continue operations. In order to resolve the outstanding issues related to the merchant cash advance lenders, restore revenues, maintain its existing contracts, and to maintain the going value of the business, the Debtor has elected to reorganize its finances under Chapter 11 of the United States Bankruptcy Code.

## **RELIEF REQUESTED**

10. The Debtor currently employs approximately 95 individuals (the "Employees"), all of which are paid on a salaried basis. In addition, the Debtor has engaged approximately 15 subcontractors (the "Subcontractors") who provide labor on jobs where the Debtor has contracted with general contractors for HVAC installations. When using subcontractors, the Debtor oversees the work of the subcontractor and provides materials, however, the Debtor could not effectively complete work without using the subcontractors.

11. In order to achieve a successful reorganization, the Debtor must honor its obligations to the Employees and Subcontractors. A failure to pay accrued Employee wages, salaries and benefits and Subcontractor payments, or even a delay in payment would have a significant negative impact on Employee and Subcontractor morale. Without the Debtor's experienced Employees and loyal Subcontractors, the Debtor would be at a serious disadvantage with respect to a successful reorganization.

12. The Debtor believes that without the relief requested the Employees and Subcontractors would be faced with tremendous hardship. Neither the Employees nor the Subcontractors could reasonably be expected to continue their efforts in connection with the Debtor's reorganization efforts while at the same time enduring financial difficulties.

13. The Debtor believes that the requested relief will enable it to maintain its current level of operations without interruption and, at the same time, maintain Employee and Subcontractor morale. The Employees and Subcontractors are both vital to its restructuring efforts and to maintaining its current level of operations. Without the relief requested, the Debtor's ability to reorganize will be thwarted.

14. Chapter 11 is designed to afford honest debtors the opportunity to reorganize and give them a "fresh start." Unless the relief requested herein is granted, the Debtor might be deprived of that opportunity. Under these circumstances, and as set forth in more detail below, the Debtor believes this Court has ample justification to grant the relief requested in the Motion.

A.  <u>Prepetition Wages and Compensation:</u>

15. The Employees are paid weekly, the next payroll date is July 21, 2023, and the wages paid will compensate Employees for work performed through July 14, 2023, being primarily prepetition wages. The Debtor also remains obligated to pay federal, state and local withholding taxes due on these wages. Paychecks must be issued on July 20, 2023, to maintain

normal payroll for the Employees. Accordingly, the Debtor seeks authority to pay all current sums owed to the Employees for wages earned prior to the Petition Date.

16. The estimated July 21, 2023 payroll for the Employees, including all amounts withheld and owed to third parties, all payments related to employee benefit programs, and the Debtor's share of any such payments or amounts totals approximately $125,000.

17. The Subcontractors are paid bi-monthly, at the middle and end of each month for work performed during the prior period. The Debtor does not make benefit payments or payments to third parties in conjunction with payments to Subcontractors.

18. The estimated payments due to Subcontractors for work done prior to the Petition Date total $65,000, and the Debtor seeks authority to pay Subcontractors in full for such sums as are due (the "Subcontractor Payments").

B.    Prepetition Withholding Taxes and Amounts Withheld For Payment to Third Parties

19. The Debtor also respectfully requests that it be permitted to deduct from and pay over all costs incident to its prepetition payrolls including, but not limited to, wage garnishments, payroll-related taxes, accrued vacation/sick pay, and employee benefit plan amounts up to the priority amount prescribed by 11 U.S.C § 507(a)(4) and (5) and pursuant to 11 U.S.C. § 507(a)(8).

20. As for the taxes withheld from the Employee checks to be delivered on July 21, 2023, the Debtor respectfully requests the authority to pay the entire amount owed to the appropriate taxing authority, including the Debtor's portion of such taxes, rather than splitting the amounts withheld for taxes into amounts owed for prepetition and postpetition wages and salaries. The amounts withheld from the Employees' checks are to be held in trust for the taxing authorities and are entitled to priority status pursuant to 11 U.S.C. §507(a)(8).

C.   Payment of Amounts Withheld From Employee Checks and Debtor's Portion

21.   In addition to the payroll-related taxes, the Debtor also withholds amounts from certain Employee checks for garnishments, health, dental and vision insurance, life insurance, and a 401(k) retirement fund ("Withheld Amounts").  In these cases, the Debtor withholds the appropriate amount from each Employee's check and then remits these funds along with the Debtor's obligation (if any) to the appropriate party.

22.   The Debtor respectfully requests the authority to pay the Withheld Amounts plus the Debtor's share for such expenditures pursuant to 11 U.S.C. § 507(a)(5).  The Debtor states that payment of the Withheld Amounts either do not exceed the statutory limit imposed by 11 U.S.C. § 507(a)(4) and (5) or do not implicate those provisions. The Debtor states that payment of the Withheld Amounts is necessary to its reorganization as a going concern and is part of its obligations as a debtor in possession.

23.   Upon information and belief, the amount owed to each Employee does not exceed the statutory priority amount of $15,150 per employee pursuant to 11 U.S.C. §507(a)(4) and (5).

**BASIS FOR REQUESTED RELIEF**

A.   Employee wages, taxes and Withheld Amounts

24.   The payment of prepetition, employee-related obligations is supported by specific provisions of the Bankruptcy Code.  Most, if not all, of these obligations qualify for priority under 11 U.S.C. § 507(a)(4) and (a)(5). Section 507(a)(4) grants a priority claim for:

> (4)   Fourth, allowed unsecured claims, but only to the extent of $15,150 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; for --
>
> (A)   wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or

6

    (B)    sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor;

(5)    Fifth, allowed unsecured claims for contributions to an employee benefit plan –

    (A)    arising from services rendered 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only –

    (B)    or each such plan, to the extent of –

        (i)    the number of employees covered by each such plan multiplied by $15,150; less

        (ii)    the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

25.    Supplementing the 11 U.S.C.§ 507(a)(4) wage/salary priority provisions, 11 U.S.C. § 507(a)(5) grants priority status to certain unpaid contributions to employee benefit plans arising from services rendered within 180 days before the filing of the Debtor's bankruptcy petition. Pursuant to this provision, priority is extended to the extent that, with respect to each benefit plan, the Employees, in the aggregate, have not reached their $15,150 per employee wage/salary limit under 11 U.S.C. § 507(a)(4). Given the priority status of employee claims, this Court should exercise its broad equitable powers under 11 U.S.C. § 105(a) to authorize the payment of the prepetition employee related obligations in the ordinary course of the Debtor's business.

26. To the extent the Debtor seeks to pay payroll taxes and Withheld Amounts, such amounts are earnings that a government, judicial authority, or the Employees themselves have designated for withholding and payment. These payments technically are not part of the Debtor's estate pursuant to 11 U.S.C. § 541(b) and authorizing the Debtor to pay such amounts will not harm or prejudice any of the Debtor's creditors.

27. Bankruptcy courts in this District have authorized payment of prepetition employee claims where nonpayment would hurt a debtor's ability to reorganize. See, e.g., *Charles Deweese Construction, Inc.*, Case No. 22-10355-JAL (Bankr. W.D. Ky., July 7, 2022) (Doc. 26); *Louisville Processing & Cold Storage, Inc.*, Case No. 22-31479-JAL (Bankr. W.D. Ky., August 5, 2022) (Doc. 18); *Rosa Mosaic & Tile Company*, Case No. 31-31649-CRM (Bankr. W.D. Ky., August 11, 2021) (Doc. 14); *S.W.R.D., LTD.,* Case No. 19-33751-ACS (Bankr. W.D. Ky., December 4, 2019) (Doc. 13). Here, failure by the Debtor to honor its prepetition obligations to the Employees and Subcontractors during this case would disrupt the Debtor's business and severely threaten the Debtor's ability to reorganize.

B.    Subcontractor Payments

28. Pursuant to 11 U.S.C. § 503(b)(1) a debtor may incur, and (after a hearing) the court shall allow as administrative expenses "the actual, necessary costs and expenses of preserving the estate." In addition, 11 U.S.C. § 363(b) permits a Debtor to exercise its business judgment (after notice and a hearing) to use property of the estate outside the ordinary course of business. The Subcontractor Payments are, in the Debtor's business judgment, necessary costs of preserving its estate, as the loss of the Subcontractor's services would result in the Debtor defaulting under various contracts which it intends, and needs, to complete in order to successfully reorganize.

29. The Debtor submits that making the Subcontractor Payments falls within the ordinary course of its business, but if not, a debtor's decision to use assets outside the ordinary course of business simply needs to be based on a sound business purpose. *In re Channel One Communications, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (citing *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d. Cir. 1983)). Here, the Debtor has weighed the potential disruption to, and loss of, business against the cost of making the Subcontractor Payments and determined that its estate and its creditors will benefit from the Subcontractor Payments as critical to the Debtor's reorganization efforts.

C.  Honoring of Prepetition Checks for Employees and Subcontractors

30. Consistent with the relief requested herein, the Debtor respectfully requests this Court to order its bank to honor checks or ACH transfers for the types of payments described above, including, but not limited to, all compensation and withheld amount checks.

D.  Notice

31. Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the Western District of Kentucky; (b) the entities listed on the Debtor's List of Creditors Holding the 20 Largest Unsecured Claims; (c) the Debtor's secured creditors; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is required.

WHEREFORE, Debtor respectfully requests that the Court enter an Order authorizing the Debtor to: (1) pay prepetition employee wages, salaries and benefits; (2) pay independent subcontractors; (3) pay all costs incident to the foregoing payments, including but not limited to payroll-related taxes, payroll processing fees; (4) honor all other withholdings payable to third parties, including to make all payments related to employee benefit programs; and (5) authorizing and directing the Debtor's bank(s) to honor checks or electronic/ACH transfers

covering the above-described payments that have been issued, but that may not have been presented for payment, may not have yet cleared through the banking system, or may have been denied for whatever reason prior to the Petition Date.

Respectfully submitted,

DELCOTTO LAW GROUP PLLC

 /s/ Dean A. Langdon
Dean A. Langdon, Esq.
200 North Upper Street
Lexington, KY  40507
Telephone:  (859) 231-5800
Facsimile:   (859) 281-1179
dlangdon@dlgfirm.com
COUNSEL FOR DEBTOR
AND DEBTOR IN POSSESSION
(UNDER PENDING APPLICATION)

## CERTIFICATE OF SERVICE

In addition to the parties who will be served electronically by the Court's ECF System, the undersigned certifies that a true and accurate copy of the foregoing was served by first-class U.S. mail, postage prepaid, or electronic mail on July 14, 2023, on the parties listed on the Debtor's initial proposed Master Service List.

/s/ Dean A. Langdon, Esq.
COUNSEL FOR DEBTOR
AND DEBTOR IN POSSESSION
(UNDER PENDING APPLICATION)