UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

IN RE:

CAIR HEATING AND COOLING, LLC

CASE NO. 23-31622
CHAPTER 11

DEBTOR

### DECLARATION OF KEVIN L. CLAPP IN SUPPORT OF
### CHAPTER 11 PETITION AND FIRST DAY MOTIONS

Pursuant to 28 U.S.C. § 1746, I, Kevin L. Clapp, declare as follows:

1. On July 13, 2023 (the "Petition Date"), Cair Heating and Cooling, LLC (the "Debtor") filed a voluntary petition for relief ("Petition") with this Court under Chapter 11, Subchapter V, of the United States Bankruptcy Code (the "Bankruptcy Code").

2. Upon commencement of this case, the Debtor is continuing to operate its business as a debtor and debtor in possession pursuant to 11 U.S.C. §§ 1182 and 1184.

3. My name is Kevin L. Clapp and I have personal knowledge of the matters stated herein and, if called upon to testify, could and would testify competently thereto. My knowledge is based in part on the business records of the Debtor, of which I have control and possession.

4. I have been a Member of the Debtor since 2010 and am the "Designated Company Representative" of the Debtor for all Chapter 11 purposes.

5. I submit this Affidavit in support of the "First Day Motions" filed after the Debtor's Petition. This Affidavit describes the business of the Debtor and the developments which led to the Debtor's filing of its Petition.

1

I.  **BACKGROUND, OVERVIEW OF DEBTOR'S BUSINESS, AND EVENTS LEADING TO THE CHAPTER 11 FILING**

6. The Debtor was initially formed as a Kentucky limited liability company in 2010. The Debtor's principal office is located at 1821 Cargo Court in Louisville, Jefferson County, Kentucky, where it leases a warehouse and office space.

7. The Debtor has historically been engaged in both commercial and residential HVAC installations, and currently maintains warehouses and offices in Louisville, Kentucky, Cincinnati, Ohio; Columbus, Ohio; and Indianapolis, Indiana. The majority of the Debtor's work consists of installing HVAC systems in multi-family residential projects.

8. The Debtor currently employs approximately 95 salaried employees, down from approximately 130. Employees are paid weekly with an approximate gross payroll (including taxes and benefits) of $125,000. The Debtor also retains approximately fifteen (15) subcontractors, which it pays on a bi-monthly basis. The amounts paid to subcontractors vary based on the nature and quantity of work they perform. The Debtor currently owes subcontractors approximately $65,000 for work already performed. The Debtor withholds and/or also pays funds for state, federal and applicable local withholding taxes, as well as any sums designated by employees for payment of insurance or other employee benefits and retirement plan contributions. Other than the most recent payroll period, payment of all withholding taxes, benefit costs and retirement contributions are current.

9. The Debtor cannot continue operating without its employees and subcontractors, and if they are not compensated in a timely manner, the employees and subcontractors will likely quit providing services. The Debtor could not easily replace employees or subcontractors in the current labor market and would likely default under its existing contracts if employees and/or subcontractors stopped working.

2

10. The Debtor holds HVAC equipment in various warehouses, the majority of which is subject to purchase money security interests of the manufacturer. Both Goodman Distribution, Inc. and Daikin Comfort Technologies Distribution, Inc. have financing statements of record with the Kentucky Secretary of State asserting a lien against inventory purchased from them. In addition, the Debtor obtained an SBA Economic Injury Disaster Loan in July of 2020, and the SBA recorded a financing statement asserting a lien in all assets of the Debtor.

11. Earlier this year, several of the general contractors that the Debtor works for began delaying payment of accounts receivable to the Debtor. This caused cash flow issues for the Debtor, who turned to merchant cash advance lenders in order to address the delayed cash flow while continuing to complete its work and begin new projects. Those lenders include On Deck Capital, LLC; Rocket Capital NY, LLC; TVT 2.0 LLC and Cucumber Capital, LLC. Repayment of the merchant cash advance lenders was made via daily or weekly ACH debits which did not change, even if the Debtor's revenue decreased.

12. The ultimate result of the repeated ACH debits by the merchant cash advance lenders was to further restrict the Debtors' cash flow. The Debtor defaulted under the merchant cash advance agreements and several of the lenders issued UCC lien notices to general contractors with outstanding accounts receivable due to the Debtor. Consequently, several general contractors have frozen payments to the Debtor, putting it at risk of not being able to continue operations. In order to resolve the outstanding issues related to the merchant cash advance lenders, restore revenues, and to maintain the going value of the business, the Debtor has elected to reorganize its finances under Chapter 11 of the United States Bankruptcy Code.

## II. FIRST DAY REQUESTS FOR RELIEF

13. In order to maintain the Debtor's ongoing operations and preserve the value of its assets, the Debtor has requested that the Court grant the following relief via "first-day" motions:

   a) Debtors' Expedited Motion for Interim Use of Cash Collateral and Authorizing and Directing the Payment of Outstanding Accounts Receivable to the Debtor;
   b) Debtors' Expedited Motion for an Order Regarding Adequate Assurance of Payment for Utility Services;
   c) Debtors' Expedited Motion for an Order (A) Authorizing Debtor to Pay and Honor Prepetition Wages, Benefits and Related Items; (B) Authorizing the Debtor to Pay Independent Subcontractors; and (C) Authorizing Financial Institutions to Honor and Process Transfers Related to Said Obligations; and
   d) Debtor's Expedited Motion to Establish Notice Procedures, Master Service List, and Grant Related Relief.

14. I have reviewed the "first-day" motions identified above, the factual recitations therein are accurate and complete, and the relief being sought is necessary for the Debtor's continued business operations.

Under penalty of perjury, I declare that the foregoing statements are true and correct.

/s/
Kevin L. Clapp, Member

Date: 7/13/23

4