UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO. 23-31622 |
| CAIR HEATING AND COOLING, LLC | ) | |
| | ) | CHAPTER 11 |
| DEBTOR. | ) | |

## ANNEX CONSTRUCTION OF HOWELL, LLC'S EMERGENCY MOTION TO COMPEL DEBTOR TO REJECT OR ASSUME EXECUTORY CONTRACT WITH ANNEX CONSTRUCTION OF HOWELL, LLC

Annex Construction of Howell, LLC ("**Annex Howell**"), a creditor and party to an executory contract with Debtor, by counsel, hereby files *Annex Construction of Howell, LLC's Emergency Motion to Compel Debtor to Reject or Assume Executory Contract with Annex Construction of Howell, LLC* (the "**Motion**") and the concurrently filed supporting *Declaration of Sam Hurley Pursuant to 28 U.S.C. § 1746 in Support of Annex Construction of Howell, LLC's Emergency Motion to Compel Debtor to Reject or Assume Executory Contract with Annex Construction of Howell, LLC* (the "**Declaration**"), which Declaration is fully incorporated into this Motion, pursuant to 11 U.S.C. § 365 and Federal Rule of Bankruptcy Procedure 6006, and respectfully moves the Court for an entry of an order compelling the Debtor to assume or reject Debtor's executory contract with Annex Howell. In support hereof, Annex Howell respectfully states as follows:

### I. JURISDICTION AND VENUE

1.     On July 14, 2023 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief with the Court under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et. seq.* (the "**Bankruptcy Code**"), thereby commencing the above-captioned

bankruptcy case (the **"Bankruptcy"**).  The Debtor is operating its business as a debtor and a debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2.       The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

3.       Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.       The statutory predicates for relief are Sections 105 and 365 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure (**"F.R.B.P."**) Rules 6006 and 9013, and United States Bankruptcy Court for the Western District of Kentucky Local Rules of Bankruptcy Procedure (**"Local Rules"**) LR 9013-1(b).

## II.  BACKGROUND

5.       Debtor filed its Voluntary Petition (the **"Petition"**) on the Petition Date.  [Doc. 1].

6.       After receiving multiple extensions of time from this Court, Debtor filed its Schedules (the "**Schedules**") on August 18, 2023.  [Doc. 102].

7.       In Schedule G, Debtor has scheduled its subcontract with Annex Howell, as described in Paragraph 10 (below), as an Executory Contract.  [Doc. 102].

8.       As of the Petition Date, Debtor owed performance obligations to Annex Howell and Annex Howell owed payment obligations (within the scope of the Subcontract) to Debtor.  (Declaration, ¶ 17).

9.       Debtor has not yet filed its Statement of Financial Affairs (the "**Statement**").

10.      On December 13, 2021, Annex Howell, as Contractor, and Cair Heating and Cooling LLC ("**Debtor**"), as Subcontractor, entered into a subcontract entitled Agreement Between Contractor and Subcontractor (the "**Subcontract**") related to Annex Howell's construction contract with Union at Oak Grove, LP (the "**Owner**") for a multi-family housing

development project, Union at Oak Grove, 1850 Molly Lane, Howell, Michigan 48855 (the "**Project**"). (Declaration, ¶ 5; Exhibit 1 to Declaration).

11.     Pursuant to the terms of the Subcontract, in exchange for the Subcontract Sum of $1,655,000.00, Debtor contracted to perform all supervision, labor, materials, supplies, tools, equipment, machinery, transportation, taxes and all other items and services necessary for the construction and completion of the HVAC work described in the Subcontract (the "**Work**"). (Declaration, ¶ 6, Exhibit 1 to Declaration, Articles 2.1 and 4.1).

12.     Article 3.6 of the Subcontract General Conditions requires Debtor to secure and pay for all permits and governmental fees, licenses and inspections necessary for the proper execution and completion of the Work. (Declaration, ¶ 7; Exhibit 1 to Declaration, Exhibit A to Exhibit 1, Article 3.6)

13.     Pursuant to Article 4 of the Subcontract, Annex Howell agreed to pay Debtor Progress Payments based upon monthly Applications for Payment submitted to Annex Howell.(Declaration, ¶ 8; Exhibit 1 to Declaration, Article 4.2).

14.     Article 5.2 of the Subcontract General Conditions sets forth the specific provisions related to submission of Applications for Payment as follows:

> 5.2  Applications for Payment.  Based upon Applications for Payment submitted by the Subcontractor, the Contractor shall make progress payments to the Subcontractor as provided below and elsewhere in the Subcontract Documents.  The period covered by each Application for Payment shall be one calendar month ending on the last day of the month.  The Application for Payment must be the current AIA Forms G701-G703 or another form approved by the Contractor, shall be accompanied by a *fully-executed Lien Waiver and Contractor's Affidavit*, in the form attached to this Agreement as Exhibit D, and shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment. Submission of an Application for Payment shall constitute a representation by the Subcontractor that (1) the Work covered by the Application for Payment has been completed in accordance with the Subcontract Documents, (2) the current payment shown is now due, (3) except as set forth in the

Application for Payment, *no additional amounts are due*, (4) *all amounts have been paid by the Subcontractor for Work for which previous payments have been received*, (5) the Subcontractor has complied with and paid all amounts due under federal, state, and local tax laws, including social security, unemployment compensation and workers' compensation laws, and (6) the remaining balance of the Subcontract Sum is sufficient to complete the Work *free and clear of all liens and encumbrances*.

(Declaration, ¶ 9; Exhibit 1 to Declaration, Exhibit A, Article 5.2) (emphasis added).

15.    Article 5.4 of the Subcontract General Conditions requires the Debtor to pay for all labor, materials, equipment, and services and further requires the Subcontractor to "...furnish satisfactory evidence, including (as a condition precedent to payment) releases, sworn statements, and lien waivers on forms provided by [Annex Howell], to verify compliance with this requirement." (Declaration ¶10; Exhibit 1 to Declaration, Exhibit A, Article 5.4).

16.    Article 5.4 further provides that Annex Howell has the right to request written evidence from the Debtor that the Debtor has properly paid sub-subcontractors and material and equipment suppliers' amounts paid by Annex Howell to the Debtor and that if Debtor fails to furnish the requested evidence of payment within seven (7) days of request, Annex Howell may contact the sub-subcontractors and material and equipment suppliers directly to ascertain the status of Debtor's payments to them. (Declaration ¶ 11; Exhibit 1 to Declaration, Exhibit A, Article 5.4).

17.    The Subcontract allows Annex Howell to withhold payment from the Debtor or nullify part or an entire Application for Payment that was previously approved if subsequently discovered evidence causes Annex Howell, in its reasonable opinion, to believe that, among other things, 1.) the Debtor has caused or will probably cause third party liens or claims to be filed against the Project; or 2.) the Debtor has failed to make payments to its sub-subcontractors and/or material and equipment suppliers; or 3.) the Debtor will cause

4

damage to the Owner or the Contractor; or 4.) the evidence shows the Work will not be completed for the unpaid balance of the Subcontract Sum. (Declaration, ¶ 12; Exhibit 1 to Declaration, Exhibit A, Article 5.5).

18.　　The Subcontract further permits Annex Howell, at its sole option, 1.) to issue joint checks to the Debtor and any sub-subcontractor and/or any material or equipment supplier; or 2.) to make direct payment to any sub-subcontractor and/or any material or equipment supplier to whom the Debtor failed to make payment for Work performed or material or equipment delivered and then to charge such payments against the Subcontract Sum. (Declaration, ¶ 13; Exhibit 1 to Declaration, Exhibit A, Article 5.5).

19.　　Debtor has submitted 10 Applications for Payment for the period extending from June 2022 through April 2023, which total $803,664.00 and which have been paid by Annex Howell.　Debtor has submitted four Applications for Payment for the period extending from May 2023 through August 2023, which are unpaid for the reasons set forth below, except for a joint check that was written to Debtor and Daikin, a Debtor vendor, in the amount of $83,899.20 and a payment to Osorio, a Debtor vendor, in the amount of $11,266.00 (the "**Payment Applications**"). (Declaration, ¶ 18; Exhibit 2 to Declaration).

20.　　In accordance with Paragraph 5.4 of the Subcontract, on July 27, 2023, Annex Howell, through its General Counsel, submitted correspondence to the Debtor requesting information that Annex Howell requires in order to issue payment on the Payment Applications pursuant to the Subcontract. (Declaration, ¶ 19; Exhibit 3 to Declaration).

21.　　Debtor did not respond to the July 27, 2023 correspondence with the requested information within the seven (7) day period provided by the Subcontract and referenced in the July 27, 2023 correspondence; therefore, on August 2, 2023, Annex Howell, through its construction counsel, submitted supplementary correspondence to Debtor's counsel

requesting assistance in facilitating the exchange of the information necessary to compile complete Applications for Payment.  (Declaration ¶ 20; Exhibit 4 to Declaration).

22.     Since submission of the July 27, 2023 and the August 2, 2023 correspondence, Annex Howell and Debtor and their respective attorneys have exchanged multiple communications regarding the information Debtor must submit in support of its Payment Applications in order to render the Payment Applications complete pursuant to the terms of the Subcontract. (Declaration, ¶ 21).

23.     On or about August 14, 2023, Debtor provided information to Annex Howell in the form of a Job Costs by Job and Vendor Detail report for the Project (the "**Job Costs Report**").  On the Job Costs Report, Debtor marked various invoices from sub-subcontractors and materials and equipment suppliers as "pd" (paid).  (Declaration, ¶ 22; Exhibit 5 to Declaration).

24.     Debtor did not submit subcontractor or material and equipment supplier lien waivers in supplement to the Job Costs Report and the Payment Applications., To date, only a small number of lien waivers for subcontractors or material and equipment suppliers related to the applications for payment submitted from June 2022 through April 2023 have been supplied by Debtor, and the greatest number of lien waivers submitted by Debtor are Debtor's own lien waivers rather than required lien waivers from sub-subcontractors and material and equipment suppliers.  Notably, in relation to the Payment Applications, as explained in Paragraph 18 (above), Annex Howell was only able to obtain completed lien waivers from Daikin (August 30, 2023) and Osario Comfort Air (August 10, 2023) following Annex Howell's affirmative actions to exercise its contractual rights to investigate Debtor's non-payment to its subcontractors and to pay Debtor's subcontractors and suppliers by joint check. (Declaration, ¶ 23).

25.     Additionally, to date Debtor has been unable to provide Annex Howell with any requested proof of payment to the sub-subcontractors and material and equipment suppliers listed by Debtor on the Job Costs Report, or, in fact, with regard to any of the payment applications ever submitted (paid and unpaid) over the course of the Project. (Declaration, ¶ 24).

26.     Meanwhile, for those sub-subcontractors and material and equipment suppliers who remain unpaid by Debtor and from whom Annex Howell has been able to obtain sufficient supporting documentation, including but not limited to invoices and lien waivers, Annex Howell has issued joint party and/or direct checks for Work completed on the Project. (Declaration, ¶ 25).

27.     Additionally, in accordance with its rights under the Subcontract, Annex Howell has attempted to contact the sub-subcontractors and equipment and materials suppliers listed in the Job Costs Report to ascertain the status of Debtor's payments to them and any outstanding amounts owed to them. (Declaration ¶ 26).

28.     Since the Petition Date, Annex Howell has learned that multiple sub-subcontractors and equipment and materials suppliers that Annex Howell believes should have been paid based on Debtor's Job Costs Report and prior incomplete payment applications have not been paid in full. Moreover, various creditors who performed Work on the Project have now filed Proofs of Claim in the Bankruptcy and have asserted under penalty of perjury that they are still owed funds by the Debtor:

    a.    The primary equipment supplier for HVAC equipment for the Project, Daikin, filed a Claim of Lien on the Project on July 27, 2023 in the amount of $83,899.20 for equipment it supplied to the Project for which Debtor had not paid.

    b.    On August 15, 2023, Creditor Chester Limited Midwest LLC dba Johnstone Supply of Detroit filed a Proof of Claim in the Bankruptcy for the amount of $1884.00, which total included several entries that

Debtor indicated on the Job Costs Report had been previously paid by Debtor.

(Declaration ¶ 27; Exhibits 6 and 7 to Declaration).

29.    Without complete Applications for Payment from Debtor and without complete information from Debtor, who has not yet filed its Statement of Financial Affairs, Annex Howell is unable to determine the current financial status of the Project with respect to the Work.  (Declaration, ¶ 28).

30.    Additionally, because Howell Annex has not been provided complete and accurate Applications for Payment, Howell Annex is unable to determine 1.) the amount properly owed to the Debtor pursuant to the Subcontract under the Payment Applications; and/or 2.) the amounts owed to sub-subcontractors and equipment and materials suppliers for Work performed on the Project for which they have not yet been paid. (Declaration, ¶ 29).

31.    Debtor's inability to provide complete and accurate information to Annex Howell pursuant to the terms of the Subcontract has effectively brought all Work on the Project to a halt, thus jeopardizing timely completion of the Project, which, pursuant to the Subcontract, is due to be complete one week from the date of this Declaration.  For example:

a.    Annex Howell paid for the permits for Building 7 on behalf of Debtor on August 8, 2023.  Multiple permits for all remaining buildings after Building 7, which are Debtor's contractual obligation to purchase, have yet to be purchased (Debtor informed Annex Howell on August 30, 2023 that permits for Buildings 22 and 23 were submitted to the relevant permitting agency, but for Phase 2 of the Project, 2 buildings remain in need of permits, and for Phase 3 of the Project, nine (9) of the buildings remain in need of permits). The permits are required for building inspections and have brought the Project to a complete halt.  Immediate purchase of building permits for the remaining buildings in Phase 2 must occur so inspections can recommence.

b.    Debtor's failure to obtain building permits for remaining Buildings in Phase 2 is preventing Annex Howell from completing drywall and preventing subsequent trades from continuing to work.

c.    Debtor does not have materials on site to perform its contractual work because of non-payment to vendors.  Debtor's inability to move forward

due to lack of permits and materials is devastating to this Project and the financial implications to Annex Howell will outweigh the contract value of Debtor.

(Declaration, ¶ 30).

32.     Debtor's inability to provide complete and accurate information to Annex Howell has also caused and continues to cause multiple problems for Annex Howell with its upstream contractual obligations, to which Debtor is also bound pursuant to the Flow-Down Clause contained in Article 1.4 of the Subcontract.  (Declaration, Exhibit 1, Article 1.4).  To wit:

    a.    Waivers required for project financing from Debtor have not been provided. The Project Lender and title company have withheld payment while working through details causing funding delays.

    b.    After several weeks of explaining the situation, Project title company and Lender are continuing their negotiations and are working toward an agreement whereby 150% of Project funding related to the Debtor's pay applications will be withheld as collateral until the issue is resolved, leaving a shortfall to pay Annex Howell's other subcontractors.

    c.    For the foregoing reasons, Annex Howell has been required to pay non-Debtor contractors on the Project out of its cash reserves since Annex Howell's project funding has been disrupted, thus placing significant strain on Annex Howell's cash position for the Project.

(Declaration, ¶ 31).

## III.  <u>RELIEF REQUESTED</u>

32.     Annex Howell requests entry of an order compelling Debtor to accept or reject its executory with Annex Howell on or before September 8, 2023.

## IV.  <u>AUTHORITY FOR RELIEF REQUESTED</u>

33.     Section 365(a) of the Bankruptcy Code provides that the trustee (or, in this case, the debtor in possession), subject to the court's approval, may assume or reject any executory contract of the debtor.  11 U.S.C. § 365.

34.     Pursuant to Section 365(d)(2), an assumption or rejection of an executory contract may be effectuated at any time prior to the confirmation of a plan in a Chapter 11 case.  However, Upon the request of any party to an executory contract with a debtor, the court may order the trustee (in this case, the debtor in possession) to determine within a specific period of time whether to assume or reject such contract or lease.  11 U.S.C. § 365(d)(2).

35.     When a party to an executory contract requests acceleration of a debtor's decision whether to assume or reject that contract, the court "…must balance the interests of the contracting party against the interests of the debtor and its estate."  *In re Greektown Holdings, L.L.C.*, 2008 WL 5567556 at *2  (Bankr. S.D. Mich., December 16, 2008), citing *In re Physician Health Corp.,* 262 B.R. 290, 292 (Bankr. D. Del. 2001).  The moving party has the burden to justify accelerating the timeframe within which the debtor can assume or reject.  *Id.,* citing *In re Republic Technologies International*, 267 B.R. 548, 554 (Bankr. N.D. Ohio 2001).

36.     As detailed in the Declaration, Debtor's failure to assume or reject the parties' executory contract is causing untenable consequences for Annex Howell and the Project. After over a month of trying to work with Debtor to obtain complete Payment Applications, Annex Howell still does not have sufficient information from the Debtor pursuant to the contract terms to evaluate how to assess the risk it faces from Debtor's non-payment of sub-subcontractors and material and equipment suppliers. Despite Annex Howell's requests, Debtor has been unable to provide any proof of its payment to sub-subcontractors and suppliers for amounts Debtor submitted for payment in the Payment Applications.

37.     Annex Howell faces serious delays and issues with its upstream financing obligations, as evidenced by the Declaration.  Annex Howell should not be required to bear the burden of Debtor's Bankruptcy and Debtor's poor record keeping to its considerable

detriment, including but not limited depletion of its cash due to the requirements that it pay other Project subcontractors and suppliers in cash in response to the financing issues the Debtor's poor record keeping has caused for Annex Howell.

38.     Moreover, but for the stay imposed by the Bankruptcy, Debtor's actions as described in the Declaration would constitute events of default that would entitle Annex Howell to replace Debtor pursuant to the terms of the Subcontract and Annex Howell would be able to proceed toward on-budget and timely completion of the Project.

39.     This Court should compel Debtor to assume (and cure) the Subcontract or to reject (and allow Annex Howell to replace Debtor and move forward on the Project) on or before September 8, 2023 so that Annex Howell can proceed with the necessary degree of certainty in fulfilling its contract obligation and in completion of the Project.

40.     Federal Rule of Bankruptcy Procedure 6006(b) provides that a proceeding by a party to an executory contract in a Chapter 11 case to require the debtor in possession to determine whether to assume or reject the executory contract is governed by F.R.B.P. 9014. (F.R.B.P. 6006).

41.     Federal Rule of Bankruptcy Procedure 6006(c) requires that notice of a motion made under F.R.B.P. 6006(b) be given to the other party to the executory contract, to other parties as the court may direct, and to the United States Trustee.  (F.R.B.P. 6006).

42.     Federal Rule of Bankruptcy Procedure 9013 provides that a request for an order shall be by written motion stating with particularity the grounds therefor and shall set forth the relief sought and shall be served in accordance with F.R.B.P. 9006(d) upon the debtor in  possession and any entities so directed by the Court.  (F.R.B.P. 9013).

43.     Local Rule 9013-1(b) requires that the movant call the Clerk of the Court to notify the Clerk of the need for immediate attention to the Motion and that the title of this

Motion include the phrase "Emergency Motion". The undersigned counsel affirms compliance with these provisions.

## V. NOTICE

44. A copy of this Motion, including a copy of the Declaration and all exhibits, will be served on the following: (a) counsel for the Debtor; (b) the United States Trustee; and (c) all parties included in the Master Service List.

**WHEREFORE,** Annex Howell respectfully requests entry of an order:

A.   Compelling Debtor to assume or reject its executory contract with Annex Howell by September 8, 2023; and

B.   Granting Annex Howell all other just and proper relief.

Respectfully submitted,

BLACKWELL, BURKE & RAMSEY, P.C.

By:   */s/ Jason R. Burke*
JASON R. BURKE
Indiana Attorney No. 19727-49
*Pro Hac Vice Admission Pending*

BLACKWELL, BURKE & RAMSEY, P.C.
101 West Ohio Street, Suite 1700
Indianapolis, Indiana 46204
(317) 635-5005
jburke@bbrlawpc.com
Counsel for The Annex Group

## CERTIFICATE OF SERVICE

In addition to the parties who will be served electronically by the Court's ECF System, the undersigned certifies that a true and accurate copy of the foregoing was served by electronic mail or first-class U.S. mail, postage prepaid, on September 1, 2023 on all non-ECF creditors as listed on the Master Service List.

*/s/ Jason R. Burke*
Counsel for The Annex Group