UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAIR HEATING AND COOLING, LLC | ) | CASE NO. 23-31622-crm |
| | ) | |
| | ) | CHAPTER 11 |
| Debtor. | ) | |
| | ) | |

## UNITED STATES' OBJECTION TO DEBTOR'S
## CONTINUED USE OF CASH COLLATERAL

Creditor, the United States of America, on behalf of its agencies the Department of Treasury, Internal Revenue Service ("IRS") and the U.S. Small Business Administration ("SBA"), by counsel, objects to Debtor's continued use of cash collateral. Both the IRS and SBA have senior claims against Debtor's cash collateral; as a result, both creditors are entitled to adequate protection, including replacement liens in Debtor's post-petition collateral and monthly adequate protection payments. In addition, the United States cannot agree to the proposed carve-out for professional expenses. While the United States is amenable to a limited carve-out, the United States needs additional information about Debtor's financial condition and projections before it can discuss those terms.

## FACTS

1. Debtor filed this Chapter 11 bankruptcy on July 14, 2023 and immediately moved the Court for permission to use its cash collateral on an interim basis through August 11, 2023. *See* Expedited Motion to Use Cash Collateral and Authorizing and Directing the Payment of Outstanding Accounts Receivable to the Debtor (DN 9) (the "Cash Collateral Motion").

2. In exchange for use of the cash collateral, Debtor proposed to grant certain Cash

Collateral Creditors[1] replacement liens, and Debtor was "open to negotiating adequate protection payments" with such creditors. *Id*. at ¶ 19.

3. Debtor's Motion also sought a "carve-out" from the cash collateral to pay U.S. Trustee fees and its professional expenses in this bankruptcy. *Id.* at ¶ 18. Specifically, Debtor requested a carve-out "of $6,500 per week for legal and accounting fees . . . ." *Id.*

4. After one creditor objected to Debtor's Cash Collateral Motion, the Court granted Debtor's expedited Motion and set another hearing for August 8, 2023 to discuss Debtor's continued use of cash collateral. *See* Order for Interim Use of Cash Collateral (DN 41) ("First Cash Collateral Order").

5. Debtor's Cash Collateral Motion correctly acknowledged that SBA "may claim an interest in [Debtor's] Cash Collateral . . . ." *See* Cash Collateral Motion, ¶ 11.

6. SBA filed its Proof of Claim on August 30, 2023 in the amount of $162,654.94, which is secured by a security interest on all Debtor's tangible and intangible personal property. *See* SBA Proof of Claim 12-1. The SBA perfected its security interest by filing a UCC Financing Statement on July 13, 2020 with the Kentucky Secretary of State. *Id.* It appears that SBA's security interest has priority over other secured creditors, except for the IRS's claim discussed below and the UCC security interest of Daikin Comfort Technologies Manufacturing L.P. in inventory, equipment, and proceeds of such items.[2]

7. While Debtor's Cash Collateral Motion acknowledged the SBA's secured claim, it did not mention the IRS, which has a six-figure, senior secured claim against all of Debtor's

---

[1] Any undefined but capitalized terms shall have the same meaning set forth in Debtor's Cash Collateral Motion.
[2] Goodman Distribution, Inc. filed a UCC Financing Statement with the Kentucky Secretary of State on June 29, 2020, and the UCC secured party was changed to Daikin Comfort Technologies Manufacturing, LP on April 20, 2022. This security interest appears to only attach to Debtor's equipment, inventory, and proceeds from these items.

property, including Debtor's cash collateral.

8. On August 8, 2023, the IRS filed its Proof of Claim in the total amount of $1,000,763.39, which includes a secured claim of $987,274.25, a priority claim of $200, and a general unsecured claim of $13,289.14. *See* Claim No. 4-1. The IRS's secured claim is based on three Notices of Federal Tax Lien recorded with the Jefferson County Clerk's Office on May 12, 2016, July 12, 2016, and October 6, 2016. The majority of the IRS's secured claim is based on unpaid employee withholdings from 2013, 2014, 2015, and 2016.

9. The IRS's federal tax liens encumber all of Debtor's prepetition property, including its equipment, inventory, deposits, and accounts receivable. 26 U.S.C. § 6321. According to Debtor's Schedules, Debtor has $262,484.87 in cash and $4,879,502.26 in accounts receivable; thus, both the IRS and SBA's claims are fully secured. *See* Schedule A/B (DN 102).

10. Even though the United States appears to have senior secured claims against Debtor's property, notice of the Cash Collateral Motion was not properly provided to the U.S. Attorney's Office as required by Fed. R. Bankr. P. 9014.

11. Pursuant to Fed. R. Bank. P. 4001(b)(1), a motion to use cash collateral must be served in accordance with Rule 9014, and that Rule requires that the motion "be served in the manner provided for service of a summons and complaint by Rule 7004 . . . ." *See* Rule 9014(b). To properly serve the United States under Rule 7004(b)(4), a copy of the motion must be served on both the U.S. Attorney in the district in which the case is filed and the Attorney General in Washington DC. The motion may also need to be served on the particular agency at issue in the matter. *See* Rule 7004.

12. Based on the defective service, counsel for the United States did not learn of

Debtor's Cash Collateral Motion until the eve of the August 8 hearing and after the Court entered the First Cash Collateral Order (DN 41). More importantly, counsel for the United States was not aware of the IRS's six-figure claim until after the August 8 hearing, when the IRS filed its Proof of Claim.

13. This Court entered a Second Interim Order for Use of Cash Collateral (DN 90) on August 9, 2023 (the "Second Cash Collateral Order"). This Second Cash Collateral Order permitted Debtor to use its cash collateral through the next hearing on September 12, 2023 in accordance with its proposed Budget. *See* Second Order, ¶ 7.

14. The Second Order similarly grants Cash Collateral Creditors Replacement Liens upon Debtor's revenue; however, such Replacement Liens are "subject and inferior to the Debtor's obligation to pay U.S. Trustee fees pursuant to 28 U.S.C. § 1930 and the payment of professional fees as set forth in the Budget." *Id.* at ¶¶ 8-9. The Second Order also grants special adequate protection to Daikin, by ordering Debtor to deposit any funds in which Daikin may be the beneficiary in a Construction Trust DIP Account. *Id.* at ¶ 8.

## **OBJECTION**

15. The United States, on behalf of SBA and IRS, objects to Debtor's continued use of cash collateral without adequate protection for its federal agencies. *See* 11 U.S.C. § 361; *see also* 11 U.S.C. § 363(e).

16. The United States requests four types of adequate protection.

17. First, both the SBA and IRS request monthly pre-plan payments from Debtor beginning September 15, 2023. The SBA requests its contractual monthly installment payments, and the IRS requests a monthly payment equal to the amount required to satisfy its secured claim

4

through a confirmable five-year plan. This monthly payment for the IRS claim would be $16,454.57.

18.     Second, the IRS—in addition to the other Cash Collateral Creditors—should be granted full replacement liens equal to the total cash used from prepetition receivables, cash, or deposit accounts.

19.     Third, assuming the replacement lien and adequate protection payments are insufficient to protect the IRS's interests, the IRS requests a superpriority administrative claim for any loss under 11 U.S.C. § 507(b).

20.     Finally, the United States requests appropriate default language in any future cash collateral order so that the parties are clear on next steps if Debtor misses an adequate protection payment.

21.     The United States also objects to the proposed "carve-out" from the IRS and SBA's replacement liens for professional expenses.

22.     While the United States recognizes that a carve-out for professional expenses may be customary in other jurisdictions to ensure that professionals are paid during the bankruptcy, the United States needs additional information about Debtor's current operations and projections before it can agree to a carve-out on specific terms in this case. *See East Coast Miner LLC v. Nixon Peabody LLP (In re Licking River Mining LLC)*, 911 F.3d 806, 812 (6th Cir. 2018). Debtor's Statement of Financial Affairs was filed on September 1, 2023, and the first creditors meeting is set for September 11, 2023. The United States has requested additional financial information from Debtor, including recent tax returns, a comparison of Debtor's projected vs actual budget since the bankruptcy filing, and a summary of Debtor's $4.879 million in accounts

receivable. Additional concern is warranted in this case because it appears that Debtor wasn't even aware of the IRS's million dollar claim at the time of the bankruptcy filing. Before the United States can agree to a carve-out, much less on the requested terms of $6,500 per week, it must understand the Debtor's ultimate end-game in this bankruptcy and the feasibility of that goal. Accordingly, additional information is needed before the United States can discuss a potential carve-out for professional expenses.

WHEREFORE, the United States respectfully requests that (i) Debtor be prohibited from using cash collateral unless and until both the IRS and SBA are given appropriate adequate protection as requested above; and (ii) the Court grant the United States any other relief to which it may be entitled.

Respectfully submitted,

MICHAEL A. BENNETT
United States Attorney

/s/ *Katherine A. Bell*
Katherine A. Bell
Assistant U. S. Attorney
717 West Broadway
Louisville, KY 40202
Phone: (502) 582-5094
Fax: (502) 625-7110
Katherine.bell@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed with the Court's electronic filing system on September 8, 2023, which will provide notice to Debtor's counsel, the U.S. Trustee, and all parties requesting notice.

*s/ Katherine A. Bell*
Katherine A. Bell
Assistant U. S. Attorney