UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

IN RE:

CAIR HEATING AND COOLING, LLC

DEBTOR

CASE NO. 23-31622
CHAPTER 11

**THIRD INTERIM ORDER FOR USE OF CASH COLLATERAL
AND AUTHORIZING AND DIRECTING THE PAYMENT OF
OUTSTANDING ACCOUNTS RECEIVABLE TO THE DEBTOR**

This matter having come before the Court for an interim hearing upon Debtor's Expedited Motion for Interim Use of Cash Collateral and Authorizing and Directing the Payment of Outstanding Accounts Receivable to the Debtor (the "Motion") [ECF No. 9] filed by Cair Heating and Cooling, LLC, as a debtor and debtor in possession (the "Debtor"), the Court having previously entered an Order for Interim Use of Cash Collateral and Authorizing and Directing the Payment of Outstanding Accounts Receivable to the Debtor [ECF No. 41] and a Second Interim Order for use of Cash Collateral and Authorizing and Directing the Payment of Outstanding Accounts Receivable to the Debtor [ECF No. 90], the United States of America, on behalf of the Department of the Treasury, Internal Revenue Service and U.S. Small Business Administration having filed an Objection to Debtor's Continued Use of Cash Collateral (the "Objection") [ECF No. 138], and counsel for the Debtor representing to the Court that they wish to continue negotiating towards a resolution of the Objection but permit the Debtor's use of cash collateral in the interim period; and the Court having reviewed the record and being otherwise sufficiently advised; and having considered same,

IT IS HEREBY ORDERED AND ADJUDGED as follows:

1

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtor's case and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

2. Notice of the hearing on the Motion has been given via electronic mail and/or first-class U.S. mail, as appropriate, on the U.S. Trustee, all secured creditors, all Cash Collateral Creditors[1] of the Debtor, and other creditors and parties as indicated in the Motion. Under the circumstances, such notice of the hearing and the specific relief requested in the Motion complies with the requirements of 11 U.S.C. § 102(1) and Fed. R. Bankr. P. 2002 and 4001. Debtor has provided adequate notice under the circumstances pursuant to Fed. R. Bankr. P. 4001 of the hearing to consider entry of this Order to all persons who are entitled to receive such notice.

3, As a result of the liens and/or security interests set forth in the UCC-1 filings, the Court assumes that the Cash Collateral Creditors assert liens on the Cash Collateral of the Debtor.

4. Good cause has been shown for entry of this Order. The entry of this Interim Order is in the best interests of the Debtor's creditors and its Estate. The terms of this Order, including the terms of the use of the Cash Collateral and the security interests, liens, rights, and priorities granted hereunder are fair under the circumstances.

5. Upon the filing of this case, certain sums payable to the Debtor from general contractors or other third parties for services performed or goods provided became property of the estate pursuant to 11 U.S.C. § 541(a)(1). To the extent a general contractor, or other third party received notice of the assignment of the Debtor's accounts receivable pursuant to Section 9-406 of the Uniform Commercial Code, the Court finds that the rights of any assignee of the Debtor in and to such accounts receivable are adequately protected by the terms of this Order. For the avoidance of doubt, general contractors and third parties which owe sums to the Debtor, and which sums are *not*

the subject of joint check agreements with vendors or other contractors, statutory lien claims, construction trust funds and/or otherwise subject to construction trust funds claims, and/or similar rights and/or interest of any vendor, supplier, and/or contractor, are hereby authorized and directed to pay such sums to the Debtor, which payments shall be deemed full compliance with and discharge of any obligations of the general contractor, including Clayton Properties Group and HCC Construction, LLC, as an account debtor to the Debtor and an assignee thereof, including but not limited to TVT 2.0, LLC, notwithstanding any provisions of the UCC or any other law or statute. Further, general contractors or other third parties that owe sums to the Debtor on account of debts owed by the Debtor to vendors, suppliers, or other contractors that <u>are</u> the subject of joint check agreements with vendors, suppliers, or other contractors, statutory lien claims, construction trust funds and/or otherwise subject to construction trust funds claims, and/or similar rights and/or interest of any vendor, supplier, and/or contractor, are hereby authorized to pay such sums directly to such vendors, suppliers, or other contractors, which payments shall be deemed in full compliance with and discharge of any obligations of the general contractor or third party, including Clayton Properties Group and HCC Construction, LLC, as an account debtor to the Debtor and any assignee thereof, including but not limited to TVT 2.0, LLC, notwithstanding any provisions of the UCC or any other law or statute. The discharge of such obligations of the account debtor pursuant to this Interim Order shall survive the conversion or dismissal of this case. This Order shall not be construed to alter the normal payment terms between general contractors, the Debtor, and any third party being paid directly or jointly with the Debtor for services or materials provided on behalf of the Debtor, including but not limited to the issuance of joint checks or direct payments to suppliers and subcontractors. Furthermore, nothing contained herein requires the payment to the Debtor of funds that constitute construction trust funds and/or are subject to statutory lien claims that prime the

---

1 All capitalized terms not defined herein have the same meaning as ascribed to them in the Motion.

interest of the Debtor, the estate, and/or any purported UCC-1 lien creditor. This section shall apply to and be deemed to authorize all payments described herein even if such payments were made prior to the entry of this Order.

6. Daikin Comfort Technologies Distribution, Inc. ("Daikin") has asserted an interest in all inventory and equipment acquired by the Debtor from Daikin or its affiliates. Daikin also asserts statutory lien rights and/or construction trust fund claims pursuant to various mechanics and materialman's liens in jurisdictions where equipment manufactured or supplied by Daikin has been delivered or installed. Each party hereby preserves all rights to seek additional relief from this Court with respect to the validity, priority and enforcement of any liens in favor of Daikin. Provided, however, in order to adequately protect Daikin's interest in cash collateral during the term of this Interim Order, the Court hereby authorizes and directs that the Debtor immediately segregate upon receipt in a separate debtor in possession (the "Construction Trust DIP Account") account any funds which may be the subject of a statutory lien claim and/or construction trust fund claim of which Daikin is or may be the beneficiary. Debtor shall supply weekly reports to Daikin showing all activity in the Construction Trust DIP Account. **NOTHING CONTAINED HEREIN PERMITS THE DEBTOR TO USE OR SPEND ANY FUNDS THAT ARE SUBJECT TO A STATUTORY LIEN CLAIM AND/OR CONSTITUTE CONSTRUCTION TRUST FUNDS.** Any funds subject to a statutory lien claim and/or which constitute construction trust funds that are received by the Debtor shall retain such character, and Daikin and the Debtor shall both retain all facts, claims, issues, rights, remedies and defenses with respect thereto.

7. Subject to the other terms contained herein, Debtor is hereby authorized to use Cash Collateral only in accordance with this Order from the Petition Date through any subsequent hearing date on this Motion and to the extent necessary to avoid irreparable harm. Debtor may use Cash

Collateral only to pay those items designated in the Budget filed with the Court as ECF No. 140 and attached as Exhibit A through September 28, 2023; provided, however, that the Debtor does not exceed the total of the Budget by more than ten percent (10%). Any expenditure which would cause the Debtor to exceed the total of the Budget by more than ten percent (10%) will require Court approval or the written consent of its Cash Collateral Creditors prior to such expenditures being made. The Debtor shall be permitted to a) modify or amend the Budget at any time pursuant to agreed order with the Cash Collateral Creditors; and b) in the absence of such agreement, file a modified budget with the Court with service upon the U.S. Trustee, all secured creditors and all tax creditors, which shall become an approved budget under this interim or any final cash collateral order unless a written objection is filed with the Court within five (5) business days. In the event an objection is filed to a modified Budget, the Debtor shall be authorized to use cash collateral pursuant to the modified Budget, except for expenses which are the subject of an objection, pending further orders of this Court. All Cash Collateral not used by the Debtor as set forth herein shall be held by the Debtor for further disposition pursuant to the Bankruptcy Code or other orders of this Court.

8. As adequate protection for any diminution in the value of the Cash Collateral Creditors' interests in the Cash Collateral, pursuant to 11 U.S.C. §§ 361 and 363, the Cash Collateral Creditors are granted liens (the "Replacement Liens"), upon the revenues from operations of the Debtor and all other property which is of the same type of collateral and priority as existed as of the Petition Date, subject only to any valid and enforceable, perfected, and non-avoidable liens of other secured creditors. The Cash Collateral Creditors do not waive their right to request and receive additional adequate protection from the Debtor, including but not limited to monthly adequate protection payments.

9. The Replacement Liens granted by this Order shall be deemed effective, valid, and perfected as of the Petition Date without the necessity of the filing or lodging by or with any entity of any documents or instruments otherwise required to be filed or lodged under applicable non-bankruptcy law. This Order shall be deemed to be a security agreement for purposes of creation, attachment and perfection of the Replacement Liens on and the security interests in, to and against the postpetition Collateral. Provided, however, that the Replacement Liens shall subject and inferior to the Debtor's obligation to pay U.S. Trustee fees pursuant to 28 U.S.C. § 1930 and the payment of professional fees as set forth in the Budget.

10. The Replacement Liens granted to the Cash Collateral Creditors under this Order are in addition to, and not in lieu or substitution of, the rights, obligations, claims, security interests, and prepetition liens and priorities granted under the existing agreements between the parties. The granting of Replacement Liens pursuant to this Order in no way restricts the Debtor's right to dispute the validity, extent or priority of any lien asserted by a Cash Collateral Creditor.

11. As additional adequate protection, Debtor shall continue to account for all cash use, and the proposed cash use as set forth in the Budget is being incurred primarily to preserve property of the Estate.

12. The Replacement Liens specifically exclude all "Chapter 5" bankruptcy causes of action, including but not limited to excluding the granting of a lien on any claim or cause of action under 11 U.S.C. §§ 544, 545, 547, 548, 549, 553(b), 723(a) or 724(a).

13. The Replacement Liens shall be junior to the Debtor's obligation to pay allowed administrative expense claims in the event this case converts to a case under Chapter 7.

14. Prior to the conclusion of the Final Hearing, the Debtor is authorized and directed to execute and comply with the terms of this Order and is further authorized to use Cash Collateral under all of the terms and conditions provided in this Order.

15. A hearing to consider and act upon the Debtor's continued use of Cash Collateral will be scheduled by separate order.

SO ORDERED.

Charles R. Merrill
United States Bankruptcy Judge
Dated: September 18, 2023

Charles R. Merrill
United States Bankruptcy Judge
Dated: September 18, 2023

Tendered by:

DELCOTTO LAW GROUP PLLC

/s/ *Dean A. Langdon*
Dean A. Langdon, Esq.
KY Bar No. 40104
200 North Upper Street
Lexington, KY 40507
Telephone: (859) 231-5800
Facsimile: (859) 281-1179
dlangdon@dlgfirm.com
COUNSEL FOR DEBTOR
AND DEBTOR IN POSSESSION


**AGREED AS TO FORM:**

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: /s/ *Jeff Carruth* (with permission)
JEFF CARRUTH (TX SBN: 24001846)
24 Greenway Plaza, Suite 2050
Houston, TX 77046
Telephone: (713) 341-1158
Facsimile: (713) 961-5341
E-mail: jcarruth@wkpz.com

ATTORNEYS FOR
DAIKIN COMFORT TECHNOLOGIES
DISTRIBUTION, INC.

MICHAEL A. BENNETT
United States Attorney

/s/ Katherine A. Bell (with permission)
Katherine A. Bell
Assistant U.S. Attorney
717 West Broadway
Louisville, KY 40202
Phone: (502) 582-5094
Fax: (502) 625-7110
Katherine.bell@usdoj.gov

<u>Exhibit A</u>

## Cair Heating and Cooling, LLC Estimated 5 week Budget

| | Week Ending 9/15 | Week Ending 9/22 | Week Ending 9/29 | Week Ending 10/6 | Week Ending 10/13 | Total |
|---|---|---|---|---|---|---|
| Estimated Gross Income | 550,000 | 550,000 | 550,000 | 550,000 | 550,000 | 2,750,000 |
| | | | | | | |
| Estimated Expenses | | | | | | |
| Inventory purchases | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 1,500,000 |
| Sub contractors | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 210,000 |
| Sub travel | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 40,000 |
| Equipment rental and leases | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 10,000 |
| Employee payroll | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 325,000 |
| Payroll taxes | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 32,500 |
| Worker's compensation | 5,250 | 5,250 | 5,250 | 5,250 | 5,250 | 26,250 |
| Rent | 5,065 | 5,065 | 5,065 | 5,065 | 5,065 | 25,325 |
| Utilities | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 8,000 |
| Office expenses and supplies | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 10,000 |
| Repairs and maintenance | 900 | 900 | 900 | 900 | 900 | 4,500 |
| Gas | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 40,000 |
| Legal fees | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 17,500 |
| Accounting fees | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 10,000 |
| Insurance | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 |
| Employee benefits (e.g., pension, medical, etc.) | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 |
| US Trustee Fees | | | | 11,000 | | 11,000 |
| Supply house COD and HD | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 17,500 |
| Miscellaneous overhead | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 15,000 |
| Total expenses | $468,315 | $468,315 | $468,315 | $479,315 | $468,315 | $2,352,575 |
| | | | | | | |
| Estimated Net Income | $81,685 | $81,685 | $81,685 | $70,685 | $81,685 | $397,425 |