Exhibit 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered effective as of the ___ day of January, 2024 (the "Effective Date"), by CLOVER CONSTRUCTION MANAGEMENT WEST CORP., a Delaware corporation ("Clover Construction"), and WILLIAM STEPHEN REISZ, THE CHAPTER 7 TRUSTEE FOR THE ESTATE OF CAIR HEATING AND COOLING, LLC (the "Trustee"), both of which are referred to hereinafter collectively as the "Parties," or individually as a "Party."

WHEREAS, Clover Construction and Cair Heating and Cooling, LLC (the "Debtor") entered into that certain AIA Standard Form of Agreement between Contractor and Subcontractor (the "McCordsville Contract"), made as of April 19, 2021, whereby the Debtor agreed to provide certain services for the benefit of real property commonly known as 7357 North Gateway Crossing Boulevard, McCordsville, Indiana 46055 (the "McCordsville Property").

WHEREAS, Clover Construction and the Debtor entered into that certain AIA Standard Form of Agreement between Contractor and Subcontractor (the "Miami Contract"), made as of February 10, 2023, whereby the Debtor agreed to provide certain services for the benefit of real property commonly known as 6350 Todd Farm Road, Miami Twp, Ohio 45150 (the "Miami Property").

WHEREAS, Clover Construction and the Debtor entered into that certain AIA Standard Form of Agreement between Contractor and Subcontractor (the "Jeffersonville Contract"), made as of July 19, 2022, whereby the Debtor agreed to provide certain services for the benefit of real property commonly known as 2123 East 10th Street, Jeffersonville, Indiana 47130 (the "Jeffersonville Property").

Exhibit 1

Exhibit 1

WHEREAS, Clover Construction and the Debtor entered into that certain AIA Standard Form of Agreement between Contractor and Subcontractor (the "Indian Trails Contract," and collectively with the McCordsville Contract, the Miami Contract, and the Jeffersonville Contract, the "Contracts"), made as of May 2, 2023, whereby the Debtor agreed to provide certain services for the benefit of real property commonly known as 135 Chestnut Lane, Indian Trail, North Carolina 28079 (the "Indian Trails Property," and collectively with the McCordsville Property, the Miami Property, and the Jeffersonville Property, the "Properties").

WHEREAS, on July 14, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, in the United States Bankruptcy Court for the Western District of Kentucky (the "Bankruptcy Court") under Case No. 23-31622 (the "Bankruptcy Case").

WHEREAS, on December 26, 2023, the Bankruptcy Court entered that certain *Order on United States Trustee's Motion to Convert* [ECF No. 289], converting the Bankruptcy Case to a chapter 7 liquidation.

WHEREAS, the Trustee was appointed to liquidate and other administer the Debtor's estate.

WHEREAS, prior to the Petition Date, the Debtor ceased performing its obligations under the Miami Contract, the Jeffersonville Contract. and the Indian Trails Contract.

WHEREAS, the Debtor defaulted prior to the Petition Date under each of the Miami Contract, the Jeffersonville Contract, and the Indian Trails Contract by failing to fulfill the Debtor's obligations thereunder, including, but not limited to, failing to pay the Debtor's subcontractors.

Exhibit 1

WHEREAS, the Debtor defaulted after the Petition Date under each of the Miami Contract, the Jeffersonville Contract, and the Indian Trails Contract by failing to fulfill the Debtor's obligations thereunder, including, but not limited to, failing to pay the Debtor's subcontractors.

WHEREAS, the Parties desire to enter into this Agreement in order to settle and discharge all matters between the Parties, including, but not limited to, all claims related to the Contracts and the Properties.

NOW THEREFORE, the Parties agree as follows:

1. <u>Recitals</u>:  The above recitals are incorporated herein by reference.

2. <u>Bankruptcy Court Approval</u>:  Within three (3) days of the Effective Date, the Trustee shall file a motion in the Bankruptcy Case seeking approval of this Agreement from the Bankruptcy Court.  The terms of this Agreement are subject to the Bankruptcy Court entering an order, which becomes final and non-appealable, approving this Agreement.  Should the Bankruptcy Court not enter a final and non-appealable order approving this Agreement, this Agreement shall be void and have no effect, even if signed by the Parties.

3. <u>Payment to the Trustee</u>:  Within ten (10) days after the Bankruptcy Court enters a final and non-appealable order approving this Settlement Agreement (the "Approval Order"), Clover Construction shall issue a payment to the Trustee in the amount of Fifteen Thousand and 00/100 Dollars ($15,000.00) (the "Settlement Payment").  The Settlement Payment shall be in full and final satisfaction of any and all amounts due to the Debtor, the Trustee, and/or the Debtor's estate under any of the Contracts.  The Settlement Payment shall be paid to the Trustee pursuant to the payment instructions set forth in **Exhibit 1**.

Exhibit 1

4. <u>Payment to the Debtor's Subcontractors</u>: Within thirty (30) days after the Approval Order becomes final and non-appealable, Clover Construction shall issue: (i) a payment to Daikin Comfort Technologies Distribution, Inc. f/k/a Goodman Distribution, Inc. ("Daikin") in the amount of Thirty-Three Thousand Five Hundred Fifty-Nine and 77/100 Dollars ($33,559.77) in connection with goods and/or services that were provided by Daikin for the benefit of the Indian Trails Property and that the Debtor subcontracted Daikin to provide; and (ii) a payment to Air Mechanical Sales, Inc. ("AMS") in the amount of Twenty-Seven Thousand Nine Hundred Three and 90/100 Dollars ($27,903.90) in connection with goods and/or services that were provided by AMS for the benefit of the Indian Trails Property and that the Debtor subcontracted AMS to provide; provided, however, the payments contemplated under this Section 4 will only be provided to Daikin and AMS, respectively, if Dakin and AMS provide corresponding lien waivers to Clover Construction, waiving any and all claims and lien rights with respect to the Indian Trails Property.

5. <u>Rejection of Contracts</u>: The Trustee agrees to, and hereby does, reject each of the Contracts in accordance with 11 U.S.C. § 365, and further agrees that Clover Construction may retain another party to complete all remaining obligations under the Contracts. Clover Construction may file a claim for any resulting rejection damages based on the rejection of the Contracts within forty-five (45) days after the Approval Order becomes final and non-appealable.

6. <u>Setoff</u>: Upon receipt of the Settlement Payment in accordance with Section 3 above, the Trustee, on behalf of the Debtor and the Debtor's estate, waives and releases any and all claims that it may have against Clover Construction or any of the Properties pursuant, or related, to the Contracts. The Trustee, on behalf of the Debtor and the Debtor's estate, admits

Exhibit 1

that the damages to Clover Construction resulting from the Debtor's defaults under the Contracts far exceed any claim the Debtor, or it's estate, has against Clover Construction related to the Properties and/or the Contracts. The Trustee, on behalf of the Debtor and the Debtor's estate, agrees that Clover Construction may exercise any and all rights of setoff with respect to any amount currently held by Clover Construction to or for the benefit of the Debtor, including, but not limited to, any retainage under the Contracts, and that Clover Construction may apply any such amount to any damages or claim that Clover Construction has against the Debtor related to, or connected with, any of the Properties. By example, Clover Construction may use amounts that the Debtor is entitled to in connection with the McCordsville Contract to satisfy claims that Clover Construction has against the Debtor in connection with the Miami Property, including, but not limited to, claims for the Debtor's failure to pay the Debtor's sub-subcontractors. The entry of the Approval Order by the Bankruptcy Court is authorization for Clover Construction to exercise any and all rights under 11 U.S.C. § 553 in accordance with this Section 6 and shall provide relief from the automatic stay under 11 U.S.C. § 362 to exercise such rights.

7. <u>Release and Discharge of Clover Construction</u>: For and in consideration of the items set forth above, the Trustee, on behalf of the Debtor and the Debtor's estate, releases and forever discharges Clover Construction and its attorneys, directors, officers, employees, agents, and representatives (the "Clover Construction Released Parties") from all other past and present claims, demands, obligations, actions and causes of action, whether now known or unknown, including, but not limited to, claims for injuries, damages, interest, attorneys' fees, costs and any other damages of any nature whatsoever, whether based on tort, negligence, common law, statutory law, or any other theory of recovery or responsibility that the Debtor now has or could have had against the Clover Construction Released Parties that arise out of or are in any way

Exhibit 1

connected to the Contracts and/or the Properties. For the avoidance of doubt, such release and discharge includes a release and waiver of any lien rights the Debtor and/or the Debtor's estate may have in connection with or related to the Properties.

8. <u>Attorneys' Fees</u>: The Parties acknowledge and agree that each party shall be responsible for its own attorneys' fees and costs. If and to the extent a dispute arises in connection with this Agreement, the prevailing party in any resulting litigation will be entitled to its fees and costs in connection with such dispute, including, but not limited to, attorneys' fees and costs.

9. <u>Non-Reliance</u>: The Parties acknowledge and agree that they do not rely, nor have they relied, on any statement, representation, omission, inducement, or promise of any other party (or any officer, agent, employee, representative or attorney for any other party) in executing this Agreement, except as expressly provided for herein.

10. <u>Entire Agreement</u>: The Parties understand and agree that this Agreement constitutes the entire agreement among the Parties, and that the terms of this Agreement are contractual and not a mere recital.

11. <u>Other Warranties, Representations and Terms</u>: The Parties warrant and represent: (a) that they are of sound mind and have the mental capacity and ability to enter into and understand this Agreement, and that they are not under any legal incapacity of any kind; (b) that they have read this Agreement before signing it; (c) that they are entering into and signing this Agreement voluntarily and of their own free will, and not under any compulsion, coercion, duress, or undue influence of any kind; and (d) that any and all prior agreements, understandings, promises, and representations between the Parties are superseded by and merged into this Agreement, and no such prior agreements, understandings, promises, or representations shall be

Exhibit 1

admissible in any suit, action or other proceeding that may arise or be filed after the date on which the Parties sign this Agreement.

12. <u>Amendment and Waivers</u>:  No amendment or waiver of any provision of this Agreement shall be valid or enforceable unless and until it is set forth in a written agreement signed by all Parties.

13. <u>Construction Interpretation and Severability</u>:  This Agreement is the result of negotiations and informed input by all Parties and their attorneys.  Therefore, if any dispute arises over the meaning or interpretation of this Agreement, it shall not be construed against a party on the basis or theory that said party drafted or was responsible for this Agreement or the language being interpreted; all parties taking responsibility for drafting this Agreement.

14. <u>Governing Law and Waiver of Jury Trial</u>:  This Agreement shall be interpreted and construed in accordance with the laws of the State of Indiana, without regard to its choice of law principles, except to the extent governed by federal law.  THE PARTIES HERETO EACH HEREBY VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM CONCERNING ANY RIGHTS UNDER THIS AGREEMENT AND AGREE THAT ANY SUCH ACTION, PROCEEDING OR COUNTERCLAIM SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

15. <u>Successors and Assigns</u>:  This Agreement shall inure to the benefit of and be binding upon the Parties hereto and their respective heirs, legal representatives, successors, and assigns.

16. <u>Advice of Counsel</u>:  The Parties warrant and represent that they have utilized the services of legal counsel in negotiating, reaching and entering into this Agreement.  The Parties

Exhibit 1

acknowledge that before signing this Agreement they have had the opportunity to have any questions regarding the terms or effect of this Agreement answered by attorneys of their choosing.  The Parties acknowledge that they have been advised of the legal consequences, including any tax consequences, of entering into this Agreement.  The Parties further acknowledge they are satisfied with the quality of legal representation provided by their counsel in this matter.

17. <u>Counterparts</u>:  This Agreement may be executed in two or more counterparts, each of which shall constitute an original, but all of which when taken together shall constitute but one agreement.  If any Party executes and delivers this Agreement via facsimile or via e-mail with an attached .pdf document, such Party hereby agrees that for the purposes of enforcement and all applicable statutes, laws and rules including, without limitation, the Uniform Commercial Code, rules of evidence and statutes of fraud: (i) the facsimile or .pdf signature of such Party shall constitute a binding signature of such Party as a symbol and mark executed and adopted by such party with a present intention to authenticate this Agreement; (ii) the facsimile or .pdf of this Agreement shall constitute a writing signed by such Party; and (iii) the facsimile or .pdf of this Agreement shall constitute an original of and best evidence of this Agreement.

18. <u>Cooperation</u>:  The Parties agree to take all reasonable action to effectuate the terms of this Agreement and cooperate, as necessary, to implement the purpose and intent of this Agreement.

THE REMAINDER OF THIS PAGE LEFT BLANK INTENTIONALLY

Exhibit 1

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first set forth above.

        CLOVER CONSTRUCTION
        MANAGEMENT WEST CORP.,
        a Delaware corporation

        By:_____

        Name:_____

        Title:_____


        WILLIAM STEPHEN REISZ,
        the Chapter 7 Trustee for the Estate of Cair
        Heating and Cooling, LLC

        By:_____

Exhibit 1

**EXHIBIT 1**

**Payment Instructions**

Exhibit 1